36 C.C.P.A.(Patents)

### Application of KNIEL.
### Patent Appeal No. 5482.

United States Court of Customs and Patent Appeals.

June 1, 1948.

Rehearing Denied Sept. 30, 1948.

Nathaniel Ely, of Washington, D. C. (Richard G. Radue, of Washington, D. C., of counsel), for appellant.

W. W. Cochran, of Washington, D. C. (E. L. Reynolds, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Chief Judge, and HATFIELD and JACKSON, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the decision of the Primary Examiner rejecting all of the claims, Nos. 1 to 7, inclusive, 9, and 10, in appellant's application for a patent for an alleged invention for a process relating to the alkylation of isoparaffinic hydrocarbons with olefinic hydrocarbons.

Claim 1 is sufficiently illustrative of appealed claims 3, 5 6, 9, and 10. Claim 2 is representative of appealed claims 4 and 7. Claims 1 and 2 read:

"1. In the process of alkylating an isoparaffin with an olefin to form high antiknock motor fuel in the presence of an alkylation catalyst wherein the isoparaffin is present in excess of that required to react with the olefin and wherein unreactive hydrocarbons lower boiling than the isoparaffin are also present, the improvement which comprises subjecting the hydro-carbon effluent from the alkylation zone consisting of alkylate and unreacted hydrocarbons to a prefractionation to separate the lower boiling unreactive hydrocarbons and a portion only of the excess isoparaffin as overhead therefrom and to concentrate the lower boiling hydrocarbons in an overhead stream, passing such overhead stream to a zone independent of the zone of said prefractionation and there fractionating such overhead alone under fractionating conditions independent of fractionating conditions within the prefractionation zone to separate the unreactive lower boiling hydrocarbons from the unreacted isoparaffin contained therein, eliminating the separated lower boiling hydrocarbons from the system, recycling the recovered isoparaffin to the alkylation zone to maintain the excess of isoparaffin therein, and fractionating the alkylate to recover a high antiknock motor fuel.

"2. The process of alkylating an isoparaffin with a normally gaseous olefin to form high antiknock motor fuel, which comprises fractionating a feed stock containing the isoparaffin and unreactive hydrocarbons both higher boiling and lower boiling than the isoparaffin to separate the isoparaffin and the lower boiling hydrocarbons as overhead therefrom, contacting the isoparaffin overhead with the normally gaseous olefin in the presence of an alkylation catalyst to effect alkylation of the isoparaffin with the olefin, maintaining an excess of isoparaffin over that required to react with the olefin during alkylation, separating the resulting hydrocarbon mixture from the alkylation catalyst, subjecting the hydrocarbon mixture to a prefractionation to separate the lower boiling unreactive hydrocarbons and a portion only of the excess isoparaffin as overhead therefrom to concentrate the unreactive hydrocarbons in such overhead passing such overhead to a zone independent of the zone of said prefractionation and there fractionating such overhead alone under fractionating conditions independent of fractionating conditions within the prefractionation zone to separate the unreactive lower boiling hydrocarbons from the excess isoparaffin therein, eliminating the separated unreactive hydrocarbons

from the system, fractionating the remainder of said hydrocarbon mixture to separate the remaining isoparaffin from the alkylate, recycling the isoparaffin recovered in the system to the alkylation zone to maintain the excess of isoparaffin therein, and fractionating the alkylate to recover a high antiknock motor fuel."

The references relied on are:

Kemp et al., 2,172,560, September 12, 1939.

Goldsby et al., 2,283,603, May 19, 1942.

Westenberg, 2,338,272, January 4, 1944.

Gardner, 2,345,742, April 4, 1944.

Appellant's application discloses a process in which a hydrocarbon is fractionated into a normal butane fraction, which is withdrawn, and an isobutane fraction containing propane which is removed as an overhead and passed to a reaction zone. Butanes and a sulfuric acid catalyst are also introduced into the reaction zone. The catalyst is separated from the reacted material which comprises four major components; namely, propane, isobutane, normal butane, and isooctane, the boiling points of which components ascend in the order named. The effluent material enters a prefractionator which is operated under such conditions that all the propane and part of the isobutane are separated as overhead vapors, while the remainder of the material is removed from the bottom of the prefractionator. The overhead vapors are condensed and a part of the condensate is returned to the prefractionator, while the remainder passes to depropanizer, where the propane is taken off as an overhead and removed from the system, while the isobutane is removed from the bottom of the depropanizer and recycled to the reactor. The materials removed from the bottom of the prefractionator are subjected to a further fractionation, by which the desired final product, a motor fuel, referred to in the claims as a "high antiknock motor fuel," is obtained.

The patent to Goldsby et al., which is the reference principally relied on, discloses an alkylation system in which isobutane and a hydrocarbon charge containing olefins are fed into a reactor with a sulfuric acid catalyst. The effluent from this reactor, which contains propane, isobutane, normal butane, and a gasoline fraction, passes to a stabilizer, from which the propane and isobutane, together with "all or a portion" of the normal butane, are removed as overhead vapors, while the remaining components, including "a portion or all" of the normal butane, are removed from the bottom of the stabilizer. The overhead vapors are then subjected to a further fractionation, in which the propane is withdrawn from the system as an overhead vapor and the normal butane is removed from the bottom of the fractionator, while a side stream which "may comprise essentially isobutane, but ordinarily contains in addition some normal butane", is removed from the side of the fractionator and returned to the reactor. It will be observed from the quoted statement that a portion or all of the normal butane is removed from the bottom of the stabilizer; that the patentees contemplate a type of operation in which none of this material is removed at the top; and that the overhead will consist essentially of the propane and all of the isobutane.

The patent to Gardner discloses a process of alkylating olefins by means of isobutane with the use of a sulfuric acid catalyst. In the process disclosed, the feed material which contains the isobutane may be fractionated to remove normal butane from it before it enters into the alkylation reaction.

The patents to Kemp et al. and Westenberg are cumulative to the disclosure in the Goldsby et al. patent and need not be considered in detail.

The patent to Goldsby et al. fully discloses the process of appealed claim 1 except that the appealed claim calls for a portion only of the excess isoparaffin (isobutane) being removed as overhead, whereas in the process disclosed by the patentees, all of the isobutane is removed in that manner. The appealed claim does not state what portion of the isobutane is removed as overhead and is, therefore, broad enough to cover a process in which ninety-nine percent or more of isobutane is removed in that manner. Since there is nothing of record to show that there is any material

difference between removing all of the isobutane as overhead and removing ninety-nine percent of it as overhead and the remainder from the bottom of the fractionator, we are of opinion that claim 1 fails to present any patentable distinction over the disclosure in the patent to Goldsby et al.

It was held by the Board of Appeals that the exact point at which the cut is taken in the fractionation of the effluent from the reactor is a question of engineering economics rather than invention. The advantages and disadvantages of taking the cut at any particular point would, in general, be recognized by those skilled in the art. Accordingly, in the absence of some showing of critical values or unexpected results, the making of the cut at some particular point would not be patentable. In the instant case, while there are general statements in the application and more specific statements in the brief of counsel for appellant as to the alleged advantages inherent in appellant's process, there is no actual evidence of comparative tests between appellant's process and that of the patent to Goldsby et al. Statements in a brief cannot take the place of actual evidence on questions of this sort. See In re Burns, 83 F.2d 292, 23 C.C.P.A., Patents, 1091. We must hold, therefore, that no showing has been made to justify a holding that invention is involved in removing any desired portion of the isobutane from the top of the prefractionator, instead of removing all of it in that manner.

Claim 2, in addition to the steps recited by claim 1, calls for a preliminary fractionation of the feed stock to separate the isobutane and lower boiling hydrocarbons as an overhead, and also calls for a fractionation of the materials remaining after the prefractionation of the effluent from the reactor to separate isobutane, which is recycled to the reactor. Those steps are not shown in the patent to Goldsby et al. and, although the preliminary fractionation is shown in the patent to Gardner in a system generally similar to that of Goldsby et al., we are of opinion that the specific combination of steps recited in claim 2 presents a sufficient distinction over the prior art to justify the allowance of that claim.

Claim 3 adds to claim 1 the statement that reflux is supplied to the prefractionator in an amount only sufficient to prevent separation of hydrocarbons higher boiling than isobutane. In the process disclosed in the patent to Goldsby et al. no reflux is supplied to the prefractionator (stabilizer), but conditions may be so maintained to prevent separation of hydrocarbons higher boiling than isobutane, since the patentees state that all the normal butanes may be removed as bottoms. The broad statement in claim 3 that the desired condition is obtained by steps including a reflux does not, in our opinion, define a patentably different process. Moreover, claim 3 defines the amount of reflux in functional terms only, and a characteristic essential of patentability cannot properly be defined in such manner. See General Electric Co. v. Wabash Appliance Corp. et al., 304 U.S. 364, 58 S.Ct. 899, 82 L.Ed. 1402.

Claim 4 depends upon claim 3 but calls for a definite reflux ratio. No such ratio is suggested by the prior art. We are of opinion, therefore, that the steps called for by claim 3, together with the definitely recited range of claim 4, constitute a patentable process.

Claim 5 adds to claim 3 the statement that the proportion of propane in the alkylation zone is less than 3%. It has not been established that this proportion is critical and the application merely states that it is "generally desirable." We are of opinion, therefore, that claim 5 is unpatentable for the same reasons hereinbefore set forth with reference to claim 3.

Claim 6 adds to claim 3 the statement that only a portion of the overhead from the prefractionator is fractionated, whereas the remainder is passed directly to reactor. This is merely a matter of choice, the expediency of which depends upon the specific composition of the overhead. It has not been established that the limitation in claim 6 is critical and, in our opinion, that claim involves no more than ordinary mechanical skill. Claim 6, therefore, was properly rejected.

Claim 7 is somewhat more specific than claim 2 and is patentable for the same reasons hereinbefore stated with reference to claim 2.

Claim 9 adds to claim 1 the broad statement that prefractionator bottoms are fractionated to separate the isoparaffin (isobutane) therefrom. This step, as defined, does not lead to any unexpected result. It is conventional, as disclosed by the prior art, to fractionate hydrocarbons to separate various desired components. Claim 9, therefore, is unpatentable for the reasons stated in connection with claim 1.

Claim 10 does not differ materially from claim 9 and is unpatentable for the same reasons stated in our disposition of that claim.

■ For the reasons stated, the decision of the Board of Appeals is modified, being reversed as to claims 2, 4, and 7, and affirmed as to claims 1, 3, 5, 6, 9, and 10.

Modified.

By reason of illness, O'CONNELL, Associate Judge, was not present at the argument of this case and did not participate in the decision.